IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN SCHULZ,<br>　　　　Plaintiff,<br>　　v.<br>BAY AREA MOTIVATE, LLC, et al.,<br>　　　　Defendants. | Case No. 19-cv-02134-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; SETTING DEADLINE FOR PLAINTIFF TO FILE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 16 |

Before the Court is the "Motion to Dismiss Under Rules 12(b)(1) and 12(b)(6)," filed June 14, 2019, on behalf of defendants Bay Area Motivate, LLC ("Motivate LLC"), Motivate International, Inc. ("Motivate Inc."), Lyft, Inc. ("Lyft"), Metropolitan Transportation Commission ("MTC"), and City and County of San Francisco ("San Francisco"). Plaintiff John Schulz ("Schulz") has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Schulz alleges he is "disabled by quadriplegia" (see First Amended Complaint ("FAC") ¶ 1), and, as a result, "requires the use of a wheelchair for locomotion" (see FAC ¶ 6), "has no use of his legs" (see FAC ¶ 1), "cannot walk or stand without use of mobility assistance devices" (see id.), and cannot "ride a standard two-wheeled bicycle" (see id.).

Schulz alleges that, under a "public-private partnership," defendants MTC and Motivate LLC entered into a "Program Agreement," under which Motivate LLC "would 'design, build, operate, maintain, and market a network of publicly available bicycles in a bikeshare system within the cities of Berkeley, Emeryville, Oakland, [defendant] San

---

[1] By order filed August 13, 2019, the Court took the matter under submission.

1 Francisco, and San Jose'" (see FAC ¶ 13 (quoting Program Agreement)), and that each

2 of those cities entered into a "Coordination Agreement" with MTC and Motivate LLC,

3 which contract "set out the 'organizational, management, and operational structure' for

4 the development of the bikeshare systems" (see FAC ¶ 14 (quoting Coordination

5 Agreement)).[2] As a result of these agreements, Schulz alleges, a "Bay Area Bike Share

6 Program known as 'Ford GoBike'" was created, which program is operated in San

7 Francisco by Motivative LLC, Motivate, Inc., and Lyft (hereinafter, "Motivate

8 Defendants"). (See FAC ¶ 1.)

9 The Program Agreement, as noted, provides that Motivate LLC will make

10 "bicycles" available. (See FAC ¶ 13; Lee Decl. Ex. 1 at 1.) Both the Program Agreement

11 and the Coordination Agreement define "Bicycle" as "a vehicle with pedals and with 2

12 wheels held in a frame and aligned one behind the other and steered with a steering

13 wheel as further described in Appendix D." (See Lee Decl. Ex. 1 at 3, Ex. 2 at 2.)[3]

14 Schulz alleges the only bicycles available under the "San Francisco Bikeshare Program"

15 are the "standard two-wheeled" bicycles defined in defendants' "contract," i.e., the

16 Program Agreement and Coordination Agreement (see FAC ¶¶ 17, 18, 20), although,

17 according to Schulz, the Motivate Defendants do provide, as part of the Oakland

18 Bikeshare Program, "accessible bike alternatives" (see FAC ¶¶ 1 and n.1).

19 Schulz alleges that, in May 2018, he wished to "spend the weekend biking around

20 the City with a nondisabled friend" and had "hope[d]" to make use of the San Francisco

21 Bikeshare Program (see FAC ¶ 24), but that he and his friend were "forced to cancel their

---

[2]Defendants have offered copies of the Program Agreement and Coordination Agreement. (See Lee Decl. Exs. 1, 2.) As Schulz has not challenged the authenticity of either such document, the Court takes judicial notice of the contents of those agreements. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994) (holding district court may take judicial notice of document not attached to complaint, where "complaint specifically refers to the document" and plaintiff does not challenge authenticity of document).

[3]Appendix D to the Program Agreement requires the bicycles to have additional features, such as a "[s]tep through design," a "bell," and "[f]ront and rear hand brakes." (See id. Ex. 1 at D-3.)

2

plans," as Schulz was "unable to use any of the two-wheeled bikes in the Bikeshare fleet" (see FAC ¶ 26). Schulz also alleges that he has "since been deterred from using the [San Francisco] Bikeshare Program." (See id.)

Based on the above allegations, Schulz asserts eight causes of action, four arising under the Americans with Disabilities Act ("ADA"), one under the federal Rehabilitation Act, and three under state law.

**DISCUSSION**

Defendants argue that Schulz has failed to plead sufficient facts to establish his standing to assert the claims in the FAC, and, in the alternative, that he has failed to plead sufficient facts to state a cognizable claim.

**A. Standing**

To establish standing, a plaintiff must show he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable decision." See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Defendants contend Schulz has failed to plead factual allegations showing he has suffered an injury in fact.[4]

"In the ADA context," a plaintiff establishes an "injury in fact" by showing he "encountered at least one barrier that interfered with [his] access to [a] particular public facility" and he "intends to return or is deterred from returning to that facility." See Kirola v. City and County of San Francisco, 860 F.3d 1164, 1174-75 (9th Cir. 2017). Here, Schulz alleges he encountered a "barrier" that precluded his ability to use the San Francisco Bikeshare Program, specifically, defendants' exclusive use of "standard two-wheeled" bicycles that he cannot use (see FAC ¶¶ 17, 26), and that he has been deterred from any further attempt to use the San Francisco Bikeshare Program in light of such asserted barrier (see FAC ¶ 26).

---

[4] Defendants do not challenge Schulz's allegations as to the other elements of standing.

3

Defendants argue Schulz nonetheless lacks standing for the reason that he does not allege "he could independently use any of the adaptive cycles." (See Defs.' Mot. at 9:25-26.) Such argument is based on defendants' assertion that a "fundamental" requirement of the San Francisco Bikeshare Program is that a customer be able to "ride a bicycle independently" (see id. at 11:1-2), i.e., "without the assistance of staff" (see id. at 4:6-7).[5] The issue of whether having no staff at bicycle rental locations is fundamental to the San Francisco Bikeshare Program, however, pertains to the merits of Schulz's claims, see A.G. v. Paradise Valley Unified Sch. Dist., 815 F.3d 1195, 1206 (9th Cir. 2016) (holding plaintiff, to prevail on merits, must show request for "reasonable accommodation" would not "fundamentally alter the nature of the program or service"), not to standing, see, e.g., Kirola, 860 F.3d at 1175 (holding plaintiff sufficiently established injury by identifying barriers she encountered when accessing some city libraries and recreation facilities; rejecting, as improperly "conflat[ing] . . . standing with whether she would prevail on the merits," defendant's argument such plaintiff failed to show she lacked meaningful access to any city program in its entirety).

Accordingly, at the pleading stage, defendants have not shown the case is subject to dismissal for lack of standing.

**B. Failure to State a Claim**

   **1. Legal Standard**

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See

---

[5] The Program Agreement requires Motivative LLC to install "Stations" at which bicycles can be rented. (See Lee Decl. Ex. 1 ¶ 3.4.) The Stations consist of (1) a "Kiosk," which is a "payment terminal," (2) a "map module," (3) "Docks," which are "locking mechanisms . . . designed to receive a Bicycle for locked storage," and (4) "when applicable," (a) "Street Treatment(s)," which are "objects used to demarcate the Station, and protect it from adjacent parking and moving traffic," and (b) "Street Markings," which are "thermoplastic paint markings and/or striping on the pavement." (See id. Ex. 1 ¶¶ 1.51, 1.71, 1.151, 1.153, 1.154.) The Program Agreement contains no requirement that the Stations be staffed, and, indeed, refers to the program as a "self-service bicycle sharing program." (See id. at page 1.)

1 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2),
2 however, "requires only 'a short and plain statement of the claim showing that the pleader
3 is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)
4 (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6)
5 motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a
6 plaintiff's obligation to provide the grounds of his entitlement to relief requires more than
7 labels and conclusions, and a formulaic recitation of the elements of a cause of action will
8 not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**2. Application**

As noted, the FAC includes eight causes of action. The Court considers the claims in the order they are addressed by the parties in their respective written submissions.

**a. Second Cause of Action**

In the Second Cause of Action, Schulz alleges defendants MTC and San Francisco have violated Title II, Part B, of the ADA. Pursuant to Title II, Part B, "it shall be considered discrimination . . . for a public entity to fail to operate a designated public transportation program or activity conducted in such facilities so that, when viewed in the entirety, the program or activity is readily accessible to and usable by individuals with disabilities." See 42 U.S.C. § 12148(a). Additionally, "[i]f a public entity operates a

demand responsive system," see 42 U.S.C. § 12144, namely, a "system of providing designated public transportation which is not a fixed route system," see 42 U.S.C. § 12141(1),[6] "it shall be considered discrimination . . . for such entity to purchase or lease a new vehicle for use on such system . . . that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs, unless such system, when viewed in its entirety, provides a level of service to such individuals equivalent to the level of service such system provides to individuals without disabilities," see 42 U.S.C. § 12144.

Here, Schulz alleges defendants MTC and San Francisco, by not providing "any accessible bikes as part of [the San Francisco Bikeshare] Program" (see FAC ¶ 49), have violated the above-referenced statutes, as well as 49 C.F.R. § 37.5, a regulation implemented under the ADA, which provides that "[n]o entity shall discriminate against an individual with a disability in connection with the provision of transportation service," see 49 C.F.R. § 37.5(a).

Defendants argue the San Francisco Bikeshare Program is not a "designated public transportation program," see 42 U.S.C. § 12148(a), and, consequently, the requirements set forth in Title II, Part B, do not apply to said program.

The term "designated public transportation" means "transportation (other than public school transportation) by bus, rail, or any other conveyance (other than transportation by aircraft or intercity or commuter rail transportation (as defined in [another section of the ADA])) that provides the general public with general or special service (including charter service) on a regular and continuing basis." See 42 U.S.C. § 12141(2). If the San Francisco Bikeshare Program is, as Schulz argues, a public transportation program, it would have to be under the theory that a bicycle is a "conveyance."

---

[6]A "fixed route system" is defined as "a system of providing designated public transportation on which a vehicle is operated along a prescribed route according to a fixed schedule." See 42 U.S.C.A. § 12141(3).

6

"Conveyance" is not defined in the ADA. "Where a statutory term is not defined in the statute, it is appropriate to accord the term its ordinary meaning," United States v. Mohrbacher, 182 F.3d 1041, 1048 (9th Cir. 1999) (internal quotation and citation omitted), and, "[w]hen there is no indication that Congress intended a specific legal meaning for the term, the court may look to sources such as dictionaries for a definition," id.

Schulz, relying on the ordinary meaning of the word, argues "conveyance," as used in § 12141(2), includes a bicycle, as a bicycle is a means by which a person can convey or transport oneself. See, e.g., Webster's Third New International Dictionary 499 (2002) (defining "conveyance" as "a means or way of conveying"; providing as example "a means of carrying or transporting something (as persons as passengers): vehicle"); Oxford American Dictionary and Language Guide 207 (1999) (defining "conveyance" as "a means of transport"; providing as example "a vehicle"). Defendants, however, argue the statutory term "conveyance" refers more narrowly to things that, like buses or railcars, are used by public entities to convey groups of people, and does not include devices that individuals use to convey themselves.

Although the definition advocated by Schulz could be supported by the above-referenced broad dictionary definitions of "conveyance," the Court finds Congress, by including in the statute the specific words "bus" and "rail," followed by the general term "any other conveyance," intended the word "conveyance" to have the narrower interpretation proposed by defendants. See Mohrbacher, 182 F.3d at 1048 (holding use of dictionary definitions not appropriate where Congress "intended a specific legal meaning for the term"). Such interpretation is supported by two "related" principles of statutory construction, "noscitur a sociis" and "ejusdem generis." See Yates v. United States, 574 U.S. 528, 135 S. Ct. 1074, 1085-86 (2015).

"Noscitur a sociis" means "a word is known by the company it keeps," and is used "to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." See id.

7

((internal quotation and citation omitted). In Yates, for example, the Supreme Court considered the meaning of "tangible object" as used in a criminal statute that provided "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence [a federal] investigation" is punishable by a fine or imprisonment, see id. at 1078 (quoting 18 U.S.C. § 1519)); noting "tangible object' follows a list of "objects used to record or preserve information," see id. at 1085, the Supreme Court limited the term to mean an object "used to record or preserve information," see id. at 1088-89; see also id. at 1081 (rejecting dictionary definition of "tangible object" as "a discrete thing . . . that possesses physical form") (internal quotations, citations and alterations omitted).

Similarly, under the "maxim ejusdem generis," if "general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001). In Circuit City, for example, the Supreme Court considered the meaning of a section of the Federal Arbitration Act that excluded "'contracts of employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce,'" see id. at 109 (quoting 9 U.S.C. § 1); in rejecting an argument that the term "contracts of . . . any other class of workers" should be interpreted as "all contracts of employment," it found such interpretation would "fail[ ] to give independent effect to the statute's enumeration of the specific categories of workers which precede it," see id. at 114 (applying ejusdem generis; noting "there would be no need for Congress to use the phrases 'seamen' and 'railroad employees' if those same classes of workers were subsumed within the meaning of the 'engaged in . . . commerce' residual clause").

Here, given the above authorities, the Court finds the phrase "any other conveyance," as used in § 12141(2), is properly interpreted as something similar to a bus or railcar, i.e., a vehicle used by a public entity to transport groups of people, as opposed

8

to a vehicle or other device by which an individual can transport himself or herself. See McBoyle v. United States, 283 U.S. 25, 26-27 (1931) (holding National Motor Vehicle Theft Act's definition of "motor vehicle" as "automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle not designed for running on rails" did not include airplanes, as each specified vehicle "is a vehicle running on land"). In particular, in keeping with the reasoning in Circuit City, the Court finds construing "conveyance" to mean any type of vehicle or device capable of transporting a person would fail to give independent effect to the statutory references to "bus" and "rail," see 42 U.S.C. § 12141(2); rather, the residual clause "any other conveyance," see id., should be "controlled and defined by reference to the enumerated categories of [conveyances] which are recited just before it," see Circuit City, 532 U.S. at 115, i.e., "bus" and "rail."

Lastly, the Court notes that, consistent with the above construction, the Department of Transportation ("DOT"), the entity to which Congress delegated the power to issue regulations . . . necessary for carrying out [Title II, Part B]," see 42 U.S.C. § 12149(a), likewise has concluded that "[f]ederal public transportation law does not define bike sharing as a form of public transportation." See https://www.transit.dot.gov/regulations-and-guidance/shared-mobility-faqs-eligibility-under-fta-grant-programs#Eligibility_4.[7]

Accordingly, as the San Francisco Bikeshare Program is not a designated public transportation program, the Second Cause of Action is subject to dismissal.

### b. Eighth Cause of Action

In the Eighth Cause of Action, Schulz alleges the Motivate Defendants, "[b]y refusing to modify their [San Francisco] Bikeshare Program," have violated 42 U.S.C. § 12184. Section 12184 provides that "[no] individual shall be discriminated against on

---

[7]In said publication, the DOT explains that agencies may apply for certain federal transportation grants to cover the "cost of installing bike sharing stations and infrastructure" if said facilities were located near a "transit station or bus stop," but that such grants cannot be used to purchase bicycles. See id.

9

the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce." See 42 U.S.C. § 12184(a).

The term "specified public transportation services," as used in § 12184(a), is defined as "transportation by bus, rail, or any other conveyance (other than by aircraft) that provides the general public with general or special service (including charter service) on a regular and continuing basis." See 42 U.S.C. § 12181(10). As said definition of "specified public transportation services" is, in all material respects, indistinguishable from the definition of "designated public transportation," the Court, for the reasons set forth above with respect to the Second Cause of Action, finds the San Francisco Bikeshare Program is not a specified public transportation service.

Accordingly, the Eighth Cause of Action is subject to dismissal.

### c. First Cause of Action[8]

In the First Cause of Action, Schulz alleges defendants MTC and San Francisco, "[b]y operating an inaccessible [San Francisco] Bikeshare Program through contract with [the] Motivate [Defendants]," have violated Title II, Part A, of the ADA. (See FAC ¶ 38.) Under Title II, Part A, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." See 42 U.S.C. § 12132.[9]

Defendants argue Schulz has failed to allege facts to support a finding that he is a "qualified individual with a disability," a term defined in the ADA as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the

---

[8] As noted, the Court discusses the claims in the order addressed by the parties.

[9] Title II, Part A, applies to "all services, programs, and activities provided or made available by public entities," see 28 C.F.R. § 35.102(a), other than "public transportation services, programs, and activities of public entities," see 28 C.F.R. § 35.102, which, as noted above, are covered by Title II, Part B.

10

removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." See 42 U.S.C. § 12131(2).

Schulz alleges the San Francisco Bikeshare Program is discriminatory because none of the bicycles are "accessible" to him, as his disability "prevent[s] [him] from riding standard two-wheeled bikes." (See FAC ¶ 17.) Schulz also alleges that bikeshare programs in other locales have "accessible bicycles available for use," including "handcycles, side-by-side tandems, and recumbent tricycles." (See FAC ¶ 18.) Although not clearly expressed in the FAC, said allegations indicate Schulz's theory is that he could meet the essential eligibility requirements of the San Francisco Bikeshare Program if afforded a reasonable accommodation, namely, inclusion of "accessible bicycles" into the rental fleet.

As defendants point out, however, Schulz does not allege he could use the "accessible bicycles" referenced in the FAC. Moreover, even if Schulz had included such an allegation,[10] he acknowledges the San Francisco Bikeshare Program is a "self-service" program (see FAC ¶ 14), and he alleges no facts to support a finding he could use such a self-service program. In particular, Schulz, who, as noted, alleges "he cannot walk or stand without use of mobility assistance devices" (see FAC ¶ 1), does not allege he could rent a bicycle and cycle away from the rental location without any assistance, nor does he allege that, as an accommodation, defendants should be required to staff the rental locations. Additionally, nothing in the Program Agreement indicates, and Schulz does not allege, that the rental locations have lockers or other facilities where Schulz can

---

[10] Schulz argues he made such an allegation in the government claims he submitted to defendants MTC and San Francisco prior to instituting the instant case. Even assuming factual allegations in a government claim can be considered to be part of a complaint, Schulz asserted in his government claims that he inquired if "hand cycles" were available, but did not assert he could operate such device. (See Clefton Decl. Ex. 2 ¶ 4; Ex. 3 ¶ 4.)

11

store his mobility assistance device while he is using a bicycle, nor does Schulz allege that, as an accommodation, defendants should be required to provide such storage services. In sum, Schulz has failed to plead facts to show there exists an accommodation or accommodations that would allow him to participate in the San Francisco Bikeshare Program.[11]

Accordingly, the First Cause of Action is subject to dismissal.

### d. Seventh Cause of Action

In the Seventh Cause of Action, Schulz alleges the Motivate Defendants, "[b]y depriving [him] . . . of the opportunity to use the rental service [they] offer[ ]" (see FAC ¶ 92), have violated 42 U.S.C. § 12182. Section 12182 provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." See 42 U.S.C. § 12182(a).[12]

The alleged deprivation on which the Seventh Cause of Action is based is the Motivate Defendant's failure to provide "accessible bikes" for rent. (See FAC ¶ 93). Defendants argue § 12182 does not require the Motivate Defendants to rent products other than those they presently offer. As set forth below, the Court agrees.

Section § 12182 has been interpreted to mean that "whatever goods or services the place [of public accommodation] provides, it cannot discriminate on the basis of

---

[11]As Schulz has not identified an accessible bicycle he could use, nor has he identified other accommodations he may need to rent such an accessible bicycle, the Court does not at this time consider whether any such accommodation would be reasonable. See A.G., 815 F.3d at 1206 (holding ADA plaintiff must show "defendant failed to make reasonable accommodations that would accommodate the plaintiff's disability without fundamentally altering the nature of the program or activity" and "that the accommodation would have enabled [him] to meet the program's essential eligibility requirements") (internal quotation and citation omitted).

[12]For purposes of § 12182, a "rental establishment" is a place of "public accommodation." See 42 U.S.C. § 12181(7)(E). Schulz alleges the San Francisco Bikeshare Program "requires users to pay a fee when releasing bikes from a public dock." (See FAC ¶ 90.)

12

disability in providing enjoyment of those goods and services." See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1115 (9th Cir. 2000). The statute, however, "does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided." See id. In other words, "the purpose of [§ 12182] is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation offers." See Ford v. Schering-Plough Corp., 145 F.3d 601, 613 (9th Cir. 1998) (internal quotation and citation omitted). The following examples clarify the scope of § 12182:

> [A] bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. Similarly, a video store must make its facilities and rental operations accessible, but is not required to stock closed-captioned video tapes.

See id. (internal quotation and citation).

In light of the above-cited authorities, the Court finds § 12182 does not require the Motivate Defendants to alter their rental inventory to stock types of bicycles they do not presently offer for rent.

Accordingly, the Seventh Cause of Action is subject to dismissal.

### e. Third Cause of Action

In the Third Cause of Action, Schulz alleges defendants MTC and San Francisco, by "failing to make their [San Francisco Bikeshare Program] readily accessible to disabled persons," have violated the Rehabilitation Act. (See FAC ¶ 60.) The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." See 29 U.S.C. § 794(a).[13]

As "[t]here is no significant difference in analysis of the rights and obligations

---

[13]Schulz alleges defendants MTC and San Francisco have used "federal financial assistance" to "fund the operations of the [San Francisco] Bikeshare Program." (See FAC ¶ 59.)

13

created by the ADA and the Rehabilitation Act," courts "have applied the same analysis to claims brought under both statutes." See Zukle v. Regents of University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

Accordingly, the Third Cause of Action is subject to dismissal for the reasons stated above with respect to the First and Second Causes of Action.

### f. Fourth Cause of Action

In the Fourth Cause of Action, Schulz alleges defendants MTC and San Francisco, by "failing to make [the San Francisco Bikeshare Program] readily accessible to and useable by disabled persons," have violated § 11135 of the California Government Code. (See FAC ¶ 66.)

Section 11135, in relevant part, provides as follows:

> (a) No person in the State of California shall, on the basis of . . . physical disability . . . be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state. . . .
>
> (b) With respect to discrimination on the basis of disability, programs and activities subject to subdivision (a) shall meet the protections and prohibitions contained in Section 202 of the federal Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132), and the federal rules and regulations adopted in implementation thereof, except that if the laws of this state prescribe stronger protections and prohibitions, the programs and activities subject to subdivision (a) shall be subject to the stronger protections and prohibitions.

See Cal. Gov't Code § 11135(a)-(b).[14]

As Schulz neither alleges in the FAC nor asserts in his opposition that California law prescribes, as pertinent to bikeshare programs, stronger protections and prohibitions than those provided by the federal authorities referenced in § 11135(b), the Court construes the Fourth Cause of Action as a claim predicated on defendants' alleged violation of § 12132, i.e., the claim alleged in the First Cause of Action.

---

[14]Schulz alleges "the administration, supervision and operation" of the San Francisco Bikeshare Program "are funded in part by the State of California." (See FAC ¶ 65.)

14

Accordingly, the Fourth Cause of Action is subject to dismissal for the reasons stated above with respect to the First Cause of Action.

### g. Fifth Cause of Action

In the Fifth Cause of Action, Schulz alleges that all defendants, by engaging in "discrimination" against him "on the basis of his disability" (see FAC ¶ 70), have violated the Unruh Act. Pursuant to the Unruh Act, "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." See Cal. Civ. Code § 51(b); see also Cal. Civ. Code § 52(a) (providing private cause of action for violation of § 51).

Defendants interpret the Fifth Cause of Action as a claim based on violations of the ADA asserted elsewhere in the FAC, and Schulz, in his opposition, does not dispute such interpretation.

Accordingly, for the reasons stated above with respect to the First, Second, Seventh, and Eighth Causes of Action, the Fifth Cause of Action is subject to dismissal.

### h. Sixth Cause of Action

In the Sixth Cause of Action, Schulz alleges that all defendants, by "denying [him] access" to the San Francisco Bikeshare Program (see FAC ¶ 80), have violated the California Disabled Persons Act ("DPA"). The DPA provides in relevant part that "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public to . . . modes of transportation [and] places of accommodation." See Cal. Civ. Code § 54.1(a)(1). "Full and equal access," for purposes of the DPA, "means access that meets the standards of Titles II and III of the [ADA] and federal regulations adopted pursuant thereto, except that, if the laws of [California] prescribe higher standards, it shall mean access that meets those higher standards." See Cal. Civ. Code § 54.1(a)(3).

As Schulz neither alleges in the FAC nor asserts in his opposition that, for entities operating bikeshare programs, California law prescribes higher standards than those

provided in the federal authorities referenced in § 54.1(a)(3), the Court construes the Sixth Cause of Action as a claim predicated on defendants' alleged violations of Titles II and III of the ADA, i.e., the claims alleged as the First, Second, Seventh, and Eighth Causes of Action.

Accordingly, for the reasons stated above with respect to the First, Second, Seventh, and Eighth Causes of Action, the Sixth Cause of Action is subject to dismissal.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is hereby GRANTED, and the FAC is DISMISSED.

Should Schulz wish to file a Second Amended Complaint, he shall file it no later than December 23, 2019.

**IT IS SO ORDERED.**

Dated: December 3, 2019

MAXINE M. CHESNEY
United States District Judge